FILED
2009 Jul-16  PM 04:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

Elizabeth Ann Holloway,            )
                                   )
              Plaintiff,           )
                                   )
      v.                           )   CIVIL ACTION NO. 08-G-2188-M
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
              Defendant.           )

## MEMORANDUM OPINION

The plaintiff, Elizabeth Ann Holloway, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would

accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for

a period of disability, a claimant must be disabled.  The Act defines disabled as the

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve

months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of

establishing entitlement to disability benefits, "physical or mental impairment" is defined

as "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory

diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations

outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner

must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

2

(5)     whether the claimant is capable of performing any work in the
national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d

1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she

will automatically be found disabled if she suffers from a listed impairment.  If the

claimant does not have a listed impairment but cannot perform her past work, the burden

shifts to the Secretary to show that the claimant can perform some other job."  Pope, at

477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

        In the instant case, the ALJ, Robert L. Hodges, determined the plaintiff met

the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found

the plaintiff unable to perform her past relevant work.  Once it is determined that the

plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show

other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform

the full range of work at a particular exertional level, the Commissioner may not

exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.

The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also

prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the

[Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## DISCUSSION

        This case involves a plaintiff who turned 50 years old on April 11, 2006.

She alleges disability based upon back pain and problems with her left wrist.  She also

complains of having bad nerves and has a history of seizure-like activity.  The plaintiff

argues that she should be found disabled based upon the report of the Commissioner's

consultative examiner, Dr. Gulati.  Dr. Gulati reported the plaintiff was a very poor

historian, noting that it "was very difficult to obtain history from her."  Record 289.  Dr.

Gulati noted the plaintiff appeared somewhat depressed, but otherwise, she was sitting

comfortably in no acute distress.  He found there was some swelling in her left wrist,

which was bowed on the dorsum.  He noted that the muscles of the left hand were weak,

and that "due to the pain she is unable to use it as much."  Otherwise he found no upper

extremity atrophy.  In the dorsolumbar spine there were no abnormalities, but there was

moderate tenderness with mild scoliosis.  The plaintiff had a very slight limp.  She was

able to squat but had a hard time getting up.  She was able to heel and toe walk without

difficulty.  Dr. Gulati diagnosed degenerative disc disease of the lower lumbar spine,

status post fracture of the left wrist with nonunion of the left ulnar styloid process, volar

deformity of the left wrist, poor vision, and pain in left wrist.  Record 291.  Under

"discussion," he wrote the following:

> At this time the [medical] source opinion form was filled out.  The patient
> basically denies being able to do any of those marked but I believe she can
> probably do sitting jobs with right-handed work.  She does need treatment
> of the left wrist with physical therapy or internal fixation.

Record 291.  Dr. Gulati also completed a medical source opinion that would limit the

plaintiff to less than full time work.  Record 292.

The ALJ refused to credit Dr. Gulati's medical source opinion and his narrative opinion that the plaintiff would only be able to do sedentary work. The first and primary reason given by the ALJ for not crediting Dr. Gulati's opinion was that it was based on the plaintiff's subjective complaints:

> The undersigned gives no weight to Dr. Gulati's October 2007 medical source opinion (physical) and his opinion suggesting she is limited to sedentary work (Exhibit 12F). Dr. Gulati is an examining, non-treating source who saw the claimant on one brief occasion and states he completed the medical source opinion form based primarily on the claimant's subjective complaints to him.

Record 21. While it is true that Dr. Gulati indicated on the medical source opinion form that it was based primarily on the plaintiff's subjective complaints, his narrative discussion limiting the plaintiff to sedentary work shows on its face that it was not based on the plaintiff's subjective complaints. Dr. Gulati in giving his opinion as to the plaintiff's residual functional capacity specifically stated the plaintiff denied being able to do any of the activities listed on the medical source opinion. However, he stated unequivocally: "I believe she can probably do sitting jobs with right-handed work." Record 291 (emphasis added). In his narrative discussion Dr. Gulati, therefore, specifically rejected the plaintiff's subjective report that she was unable to engage in any of the activities on the medical source opinion. However, he stated that it was *his opinion* that the plaintiff could do sedentary work using her right hand. He obviously based his opinion on his examination of the plaintiff, which revealed tenderness of the dorsal lumbar spine and weakness in the muscles of the left hand. The ALJ's rejection of Dr.

Gulati's narrative opinion because it was based upon the plaintiff subjective complaints

was, therefore, not supported by substantial evidence.

        The ALJ also refused to credit Dr. Gulati because of the plaintiff's activities

reported to other examiners and at her disability hearing:

> He [Dr. Gulati] makes no reference to reviewing any of her medical
> treatment history wherein evidence shows she reports engaging in activities
> and daily living tasks consistent with good bilateral use of her upper
> extremities and which are consistent with light work.

Record 21.  Elsewhere in his opinion the ALJ discussed those activities that he apparently

believed were inconsistent with Dr. Gulati's report:

> The claimant has reported engaging in activities consistent with the ability
> to perform light, unskilled work. The claimant testified she lives with a
> friend and spends her time doing household cleaning. She earlier reported
> she cooks, baby-sits her grandchildren, drives, independently dresses and
> grooms herself,  grocery shops, goes out to eat, visits with long-time
> friends, does laundry and dishes, and gets on a trampoline (Exhibits 2E-4E,
> 5F, 7F). These activities and abilities are consistent with the ability to sit,
> stand, walk, lift, push, pull, reach, carry, handle, and climb. They are
> consistent with good social interaction with family, friends, and the general
> public. She was the babysitter of her twin, one-year old grandchildren
> which can be quite demanding physically, stating she feeds them, changes
> their diapers, and plays with them, all of which is consistent with good
> adaptive functioning and the ability to behave responsibly.

Record 20.

        The reports cited by the ALJ were all dated well prior to Dr. Gulati's

examination of the plaintiff.  The plaintiff completed Exhibits 2E-4E on August 31, 2005.

One of the  medical exhibits cited by the ALJ, Exhibit 5F, was from the consultative

psychological examination by Dr. Arnold on October 12, 2005.  The other, Exhibit 7F,

contained treatment notes from Dr. Palmer between April 13, 2006, and May 30, 2006.
Dr. Gulati's examination was on October 22, 2007.  This was over two years after the
time the plaintiff completed her daily activities and physical activities questionnaires,
which the ALJ attempts to use to discredit Dr. Gulati's opinions.  Dr. Gulati's
examination was nearly 17 months after the last treatment note from Dr. Palmer.  It is not
rational to discount totally Dr. Gulati's opinions about the plaintiff's ability to perform
work-related activities in October 2007 based upon the plaintiff's report of her abilities
many months and even years previously.

       The ALJ relied heavily upon the plaintiff's ability to babysit her twin, one
year old grandchildren in refusing to credit Dr. Gulati.  However, she reported this
activity to Dr. Arnold two years prior to Dr. Gulati's examination.  In addition, the
plaintiff did not report being the only caretaker of her grand children.  Dr. Arnold
reported the plaintiff's statements as follows:

> The claimant provides childcare.  "I change diapers, feed 'em, play with
> 'em and watch 'em, i.e. year old twin grandbabies.  "The (teenage) girls
> give 'em a bath."  "The babies go to bed when we do," i.e. 10:30 PM.

Record 196.  The ALJ selectively used portions of the plaintiff's statements to Dr.
Arnold, failing to mention that the plaintiff reported that her step daughters bathed the
grand children.  Dr. Arnold's report also contains evidence indicating that even though
the plaintiff attempted to do housework, she was limited by her impairments:

> "I pick up the house a lifter (sic) bit.  I don't do much."  She does laundry
> and dishes.  The claimant shopped for groceries with benefit of food

stamps.  "The girls help cook.  I can't stand 'cause my legs get numb and I fall."

Even though she reported to Dr. Arnold that she was able to do some housework, she also stated that she didn't do much and could not stand for long periods because her legs became numb and she fell.  The ALJ selectively used portions of the statements made by the plaintiff to Dr. Arnold to create a distorted impression of the plaintiff's report of her daily activities.

Another reason given by the ALJ for failing to credit Dr. Gulati was that he was not present at the hearing:  "Furthermore, he was not present at the hearing wherein she also testified to engaging in similar activities."  Record 23.  The ALJ characterized plaintiff's testimony as follows:  "The claimant testified she lives with a friend and spends her time doing household cleaning."  Record 20.  Plaintiff actually testified as follows: "I'd try to help the friend that I stay with, I'd try to help, you know, clean house a little bit.  I'll try to do help do [sic] the dishes and stuff, what I can do.  ... Then I have to go sit down.  "  Record 329.  The ALJ's characterization of the testimony implies the plaintiff spends the day cleaning her friends house.  However, the testimony is of a much more limited ability to do housework, and then only followed by resting.  It is unlikely Dr. Gulati would have changed his opinion had he heard the plaintiff's testimony and unreasonable to discredit him based upon that testimony.

In listing the plaintiff's activities that he believed were inconsistent with a limitation to sedentary work, the ALJ included that she "gets on a trampoline."  Record

8

20.  However, the only mention of this in the record is in connection with medical treatment for a broken wrist sustained in April 2006.  Dr. Gulati specifically noted residual problems with the plaintiff's left wrist, including weakness secondary to pain, directly attributable to that broken wrist.  He also concluded that the plaintiff "does need treatment of the left wrist with physical therapy or internal fixation."  Record 291.  Therefore, it was improper to discredit Dr. Gulati based upon the activity that caused the fracture to plaintiff's wrist.

## CONCLUSION

After having carefully reviewed the record, the court concludes that substantial evidence does not support the ALJ's refusal to credit Dr. Gulati's opinion that the plaintiff was limited to sedentary work at the time of his examination.  It was not reasonable for the ALJ to rely on reports of activities many months or even years prior to the time Dr. Gulati examined the plaintiff to discredit his opinions.  Nor was it proper to selectively use portions of those reports to suggest the plaintiff reported her daily activities to be greater than her statements in context indicated.  Dr. Gulati examined the plaintiff and was entitled to form his own opinions about the plaintiff's residual functional capacity at that time based upon his examination.

The ALJ's finding that the plaintiff could perform light work at the time she was examined by Dr. Gulati is not supported by substantial evidence. Based upon the opinion of Dr. Gulati, the plaintiff was only capable of sedentary work at the time of his examination.  Therefore, the Commissioner failed to carry his burden at step five of

showing the plaintiff could perform other work.   At the time she was examined by Dr.

Gulati she was 51 years old.  She has a limited education and no transferable skills.

Record 23, 334.  Based upon the plaintiff's age, an RFC for sedentary work, and no

transferable skills, the plaintiff is disabled under the grids.  The decision of the

Commissioner will be reversed and the action remanded for an awarded of benefits based

upon an onset of disability as of the date of Dr. Gulati's consultative examination unless

the commissioner determines an earlier onset date is warranted.

   An appropriate order will be entered contemporaneously herewith.

   DONE and ORDERED 16 July 2009.

                     _____

                 UNITED STATES DISTRICT JUDGE
                   J. FOY GUIN, JR.